UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
**GLOBAL DISTRESSED ALPHA FUND I LP,** )
                                   )
           **Petitioner,**         )
                                   )
      v.                           )   Civil Action No. 10-0122 (ESH)
                                   )
**RED SEA FLOUR MILLS CO. LTD.,**  )
                                   )
           **Respondent.**         )
                                   )
_____)


## MEMORANDUM OPINION

Global Distressed Alpha Fund I LP ("Global Distressed" or "Petitioner"), as the successor-in-interest to SASEA Holding in Bankruptcy ("SASEA"), has filed a petition to confirm two foreign arbitral awards against Red Sea Flour Mills Co. Ltd. ("Red Sea" or "Respondent") pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, New York, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38 ("the New York Convention") and Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201-208. (Petition to Confirm Foreign Arbitral Awards ("Petition"), Jan. 21, 2010 [dkt. #1].) A default has been entered against Red Sea, which has neither responded to the Petition nor appeared in the case. (Entry of Default, June 30, 2010 [dkt. #9].) Before the Court is petitioner's motion for a default judgment confirming the awards. (Mot. for Default Judgment, July 2, 2010 [dkt. #10].) For the reasons stated herein, Petitioner's motion for default judgment will be granted and an order confirming the awards and entering judgment for Petitioner and against Respondent will be issued.

# BACKGROUND[1]

Red Sea is a company organized and existing under the laws of the Republic of Yemen, with its principal place of business in Sana'a, Republic of Yemen. (Petition ¶ 5.) Red Sea operates one of the largest milling plants in Yemen. (*Id.*) SASEA, prior to its bankruptcy in 1992, was a Swiss holding company for a large group of corporations. (*Id.*, Att. 1, Ex. B, at 5.) During the 1980's, Red Sea accumulated a number of unpaid debts to SASEA and several of its affiliated companies. (*Id.* ¶ 10.) On September 13, 1991, Red Sea and SASEA entered into a Memorandum of Agreement to settle these debts. (*Id.* ¶ 10 & Att. 1, Ex. A.) Pursuant to the Memorandum of Agreement, Red Sea agreed to pay SASEA a sum equivalent to the balance it owed as of December 31, 1990,[2] plus 6% annual interest, via monthly installment payments. (*Id.* ¶ 11.) Article 6 of the Memorandum of Agreement provided that "[a]ny difficulties arising when this agreement is put into effect or from the consequences thereof, or arising from the interpretation of this agreement or of its consequences will come under the jurisdiction of an Arbitration Tribunal based in Geneva (Switzerland)." (*Id.* ¶ 13 & Att. 1, Ex. A, at 4.)

Red Sea failed to repay any of the amounts due under the Memorandum of Agreement. (*Id.* ¶ 12.) On August 9, 2001, SASEA filed two requests for arbitration: the first sought an award of $85,582,740; the second sought interest on that amount from December 31, 1990 until full payment was made. (*Id.* ¶ 13-14 & Att. 1, Ex. B, at 5.) On October 10, 2002, a

---

[1]As Respondent Red Sea has not appeared, the Court relies upon the Petition for the factual history of the case.

[2]According to the Memorandum of Agreement, Red Sea's debt to SASEA at that time was $154,927,774, FF5,585,173 (French francs), and ITL2,501,173,240 (Italian lira). (*Id.*, Att. 1, Ex. A, at 2.)

three-member arbitral tribunal was duly constituted in Geneva, Switzerland.[3] (*Id*. ¶ 14 & Att. 1, Ex. A, at 5.)  For the next four years, the arbitral tribunal conducted proceedings, which included written submissions, discovery and factual investigation, and two major witness hearings.  (*Id.* ¶ 15.)  In the first phase, Red Sea, through counsel, filed written submissions and participated in the first witness hearing, but then its participation ceased.  (*Id.*)

On January 22, 2007, the arbitral tribunal issued its "Award on the Principal Amount" ("Award on Principle") (*Id*. ¶ 2 & Att. 1, Ex. B (certified copy of Award on Principal).)  The Award on Principal declared that Red Sea was required to pay SASEA $82,733,989 as "the total principal amount" and that all claims exceeding that amount were dismissed.  (*Id*., Att. 1, Ex. B, ¶ 293, at 68.)  The Award on Principal structured Red Sea's payments as follows: (1) $3,654,627, representing the amount that Red Sea owed pursuant to paragraph 2(c) of the Memorandum of Agreement, to be paid immediately; (2) $27,725,725, representing all monthly payments due and owing from May 30, 1993 to November 30, 2005, pursuant to Article 1 of the Memorandum of Agreement, to be paid immediately; and (3) the remaining balance of $51,353,637, to be paid in monthly payments of YER20,000,000[4] "as from December 31, 2005"

---

[3]As provided by the Memorandum of Agreement, SASEA and Red Sea each appointed one arbitrator, with the chairman of the arbitral tribunal appointed by agreement of the two party-appointed arbitrators.  The final panel was comprised of three experienced Swiss international arbitrators: Prof. Dr. Franz Kellerhals, founder of the Kellerhals firm, Bern, Switzerland, as chairman; Dr. Wolfgang Peter, of the law firm Python & Peter, Geneva, Switzerland; and Dr. Armand Meyer, former President of the Zurich Commercial Court.  (*Id.* ¶ 14.)

[4]YER is the currency abbreviation for the Yemeni rial.  The Award on Principal provides that Red Sea is to "exercise its best efforts to obtain the conversion of these monthly payments into US dollars at the exchange rate prevailing on the date of each such payment."  (*Id*., Att. 1, Ex. B, at 68.)

until paid in full. (*Id.*) The Award on Principal also ordered Red Sea to pay CHF810,000[5] in arbitration fees and costs, and CHF1,789,591.23 in legal fees and expenses. (*Id.* at 68-69.)

On May 18, 2007, the arbitral tribunal issued its "Award on Interest." (*Id.* ¶ 2 & Att. 1, Ex. C.) The Award on Interest ordered Red Sea to pay SASEA the following amounts: (1) 6% simple interest per annum on the unpaid principal amount of $3,654,627 from September 13, 1991, until full payment; (2) $15,302,525, to be paid immediately, representing accrued 6% simple interest on overdue monthly payments which should have been made from May 30, 1993, to November 30, 2005; (3) 6% simple interest per annum on "the overdue monthly payments which [Red Sea] should have made to SASEA" from December 31, 2005, to April 30, 2007; (4) 6% simple interest per annum for "late payment of all monthly payments which become due and owing" from May 31, 2007, until the "remaining balance of the total principal amount of . . . $82,733,989 is paid in full." (*Id.*, Att. 1, Ex. C, at 23.) The Award on Interest also ordered Red Sea to pay an additional CHF90,000 in arbitration fees and costs. (*Id.*, Att. 1, Ex. C, at 23-24.) Red Sea has not complied with the terms of either Award. (*Id.* ¶ 18.)

Effective December 1, 2009, SASEA sold and assigned all rights, claims and interests arising out of or related to both Awards to Global Distressed, a limited partnership established under the laws of Bermuda and managed by CI Management Services S.A., 30a Route de Chene, 1208 Geneva, Switzerland. (*Id.* ¶ 3 & Att. 1, Ex. D.) On January 21, 2010, Global Distressed, as SASEA's successor-in-interest, filed the pending Petition to confirm both awards. (*Id.*) Attached to the Petition were certified copies of the Memorandum of Understanding, the Award on Principal, the Award on Interest, and the Deed of Assignment from SASEA to Global

---

[5]CHF is the currency abbreviation for the Swiss Franc.

Distressed. (Id., Att. 1, Exs. A-D.) The Petition asks the Court to (1) confirm the awards against Red Sea; (2) enter judgment based on the Award on Principal in the exact amounts and terms and conditions for payment provided therein; and (3) enter judgment based on the Award on Interest that reflects Petitioner's calculation of interest now due on certain of the underlying obligations; and (4) award post-judgment interest pursuant to 28 U.S.C. § 1961 on any judgment entered. (Petition at 9.)

Petitioner was forced to attempt to serve Red Sea on multiple occasions and using a variety on methods due to Red Sea's efforts evade service. (Order, June 18, 2010 [dkt #8].) Ultimately, service was accomplished as of April 5, 2010, under either Federal Rule of Civil Procedure 4(f)(2)(A) or 4(f)(2)(C)(ii). (*Id.*) On June 30, 2010, after Red Sea failed to respond to the Petition, the Clerk of Court entered a default. (Entry of Default, June 30, 2010 [dkt. #9].) On July 2, 2010, Petitioner moved for a default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (Mot. for Default Judgment, July 2, 2010 [dkt. #10].) Red Sea has not responded to the entry of default or the motion for default judgment.

**ANALYSIS**

The New York Convention, as ratified and implemented by Chapter 2 of the Federal Arbitration Act, 9 U.S. C. §§ 201-208, is a multilateral treaty, ratified by the United States, which authorizes the recipient of a foreign arbitral award that falls under the Convention to seek confirmation of the award in federal district court. *See* 9 U.S.C. § 201 (providing that the New York Convention "shall be enforced in the United States courts in accordance with this chapter); *id.* § 203 (providing that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States" and "[t]he district courts of the

5

United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy"). An arbitral award falls under the Convention if it was made in the "territory of a State other than the State where the recognition and enforcement" of the award is sought, New York Convention, Art. I, ¶ 1, it was made in another "Contracting State" – a state that is a party to the Convention, *see Creighton Ltd. v. Gov't of the State of Qatar*, 181 F.3d 118, 121 (D.C. Cir. 1999), and it "aris[es] out of a legal relationship, whether contractual or not, which is considered as commercial" and that, with certain limited exceptions, is not "entirely between citizens of the United States." 9 U.S.C. § 202.[6] A petition seeking confirmation must be filed "[w]ithin three years after an arbitral award falling under the Convention is made." *Id.* § 207. If a timely petition for confirmation has been filed, the court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.*

Article V of the New York Convention specifies the following grounds for refusing confirmation:

> 1.  Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

---

[6] "The third paragraph of Article I of the Convention provides that a party acceding to the Convention may do so with the reservations: (1) that it will apply the Convention to the recognition and enforcement of awards made only in the territory of another contracting state; and (2) that it will apply the Convention only to differences arising out of legal relationships, whether contractual or not, which are considered as commercial under the national law of the state making so acceding. The United States signed the Convention with these reservations, the first of which imposes what may be described as a reciprocity requirement, and the second of which limits resort to the Convention in the United States only for enforcement of commercial disputes." *Confirmation of Foreign Arbitral Award Under Convention on Recognition and Enforcement of Foreign Arbitral Awards*, 194 A.L.R. Fed. 291, § 2[a] (2004).

(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters submitted to arbitration may be recognized and enforced; or

(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

New York Convention, Art. V; *see also G.E. Transp. S.P.A. v. Republic of Albania*, 663 F. Supp. 2d 132, 137 (D.D.C. 2010) (summarizing grounds for refusing confirmation as "incapacity of the parties; invalidity of the underlying agreement; an award beyond the scope of the arbitration agreement; improper composition of the arbitration panel; and an award that has not yet become

binding, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made"); *see also TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 934-35 (D.C. Cir. 2007)).

Based on the Court's consideration of the record, Petitioner is entitled to confirmation of the Awards. First, the Awards fall under the New York Convention. They arose out of a commercial legal relationship between Red Sea, a company in Yemen, and SASEA Holding, a Swiss company, neither of which is a citizen of the United States, and they were made in Geneva, Switzerland, the territory of another state that is a signatory to the Convention. (Petition ¶¶ 21-22 & Att. 1, Exs. B & C.) In addition, Petitioner filed a timely petition to confirm on January 21, 2010, within three years of the issuance of the Awards on January 22, 2007, and May 18, 2007. Finally, none of the grounds for refusal or deferral of recognition specified in Article V of the Convention are present in this case. Accordingly, Petitioner is entitled to confirmation of the awards and a corresponding judgment. Petitioner is also entitled to post-judgment interest pursuant to 28 U.S.C. § 1961.

## CONCLUSION

For the reasons set forth above, an accompanying order and judgment will grant Petitioner's motion for default judgment, confirm the two foreign arbitral awards that are the subject of the Petition, and enter judgment in favor of Global Distressed and against Respondent Red Sea.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

DATE: July 28, 2010

8